IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JESSICA MISHOS, | : |
| Plaintiff, | : Case No. 2:22-cv-01666 |
| v. | : Chief Judge Algenon L. Marbley |
| MCKESSON CORPORATION, | : Magistrate Judge Kimberly A. Jolson |
| Defendant. | : |

**OPINION & ORDER**

## I. INTRODUCTION

This matter, which arises out of alleged violations of the Americans with Disabilities Act of 1990 ("ADA"), Pub. L. No. 101-335, 104 Stat. 327 (1990) (codified as amended in scattered sections of 42 and 47 U.S.C.), and the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (codified in scattered sections of 29 and 42 U.S.C.), is now before the Court on Defendant's Motion to Dismiss (ECF No. 24) and Motion to Strike (ECF No. 30). Plaintiff Jessica Mishos, proceeding without the assistance of counsel, asserts that the COVID-19 policies issued by her former employer, Defendant McKesson Corporation ("McKesson"), violated the ADA's prohibitions against disability discrimination, non-job-related medical examinations and inquiries, intrusion upon medical privacy, and retaliation. (*See generally* Am. Compl., ECF No. 23). Mishos, however, has failed to allege that she suffers from an impairment cognizable under the ADA—nor that she has been regarded as or has a record of such impairment. Her claim of disability discrimination therefore fails to state a claim; for related reasons, her other claims fail too. Accordingly, Defendant's Motion to Dismiss (ECF No. 24) is **GRANTED**. Plaintiff's Motion to Leave to Amend (ECF No. 34) is **DENIED AS MOOT**.

1

## II. BACKGROUND

At the motion to dismiss stage, the Court accepts as true the allegations in Mishos' Amended Complaint, in which she describes her employment history at McKesson prior to and during the COVID-19 pandemic, until her termination in March 2022.

### A. Factual Background

Mishos began working for McKesson, a healthcare company headquartered in Texas, on August 27, 2018. (*See* Am. Compl. ¶ 18, ECF No. 23). McKesson has maintained an office location in Columbus, Ohio, since 2017, when it acquired the Columbus-based software company CoverMyMeds. Mishos started at McKesson as a Senior Account Coordinator, before transitioning to the Senior Associate Customer Success Manager role in August 2021. (*Id.*). McKesson had closed its offices through much of 2020 and the first half of 2021 in response to the global COVID-19 pandemic, permitting employees to work remotely during that time. In the summer of 2021, McKesson began planning to re-open its offices while also plotting the best way to minimize the spread of COVID-19 among in-office employees. (*See* Affidavit of Jessica Mishos ("Mishos Aff.") ¶¶ 11–12, ECF No. 23-1; *see also id.* Ex. A-1). In June, McKesson informed employees via email that they would be required to wear facemasks, to engage in social distancing, to come into the office on a staggered schedule, and to use an online scheduling tool to reserve desks. (*See id.* Ex. A-1).

Beginning on August 9, 2021, McKesson required employees who chose to work from the office to be fully vaccinated and to provide proof of vaccination. (*Id.* Ex. A-2). Employees at that point had a choice: they could continue working from home or could work out of the office, as long as they first submitted proof of vaccination to their manager in a 1-on-1 video call or in person. (*Id.*). The following month, McKesson updated its COVID-19 vaccination policy,

2

requiring all "[e]mployees who enter professional healthcare settings as part of their role, . . . including sales professionals, delivery professionals, and implementation team" to be fully vaccinated by November 15, 2021. (*Id.* Ex. A-6). Additionally, all employees were required to inform the company of their vaccination status by October 1, 2021. (*See id.*). Any employee, however, who was "required but unable to be vaccinated due to a medical condition or sincerely held belief" was authorized to seek an accommodation. (*Id.*). Employees who did not comply risked termination.

Mishos did not comply with any of the requirements outlined above. She did not provide her vaccination status to McKesson by the October 1, 2021, deadline. (Am. Compl. ¶ 28, ECF No. 23). She did not receive the COVID-19 vaccine. (*See id.* ¶ 32). Over the following months, Mishos had repeated conversations with her supervisors and Human Resources ("HR") employees at McKesson, in which she was told that her position would be terminated if she continued to refuse to receive the COVID-19 vaccine or request an accommodation. Mishos, in response, maintained her refusal and further claimed that she was unwilling to provide her vaccination status to McKesson because to do so, and in the manner required by McKesson, would violate her rights. (*See generally id.* ¶¶ 27, 31–35, 37–39). She also asserted in emails to HR that, by classifying her as unvaccinated, McKesson was effectively labeling her as "disabled." (*Id.* ¶ 34). The only request from the company that Mishos did comply with was a "Covid-19: your questions answered" training, which she completed in January 2022. (*See id.* ¶ 40).

Mishos was terminated in March 2022. (*Id.* ¶¶ 46–49).

**B. Procedural Background**

Following Mishos' termination from McKesson, she filed a complaint in this Court. (*See* Compl., ECF No. 4). That complaint has since been superseded by an amended complaint. (*See*

Am. Compl., ECF No. 23). Defendant's initial Motion to Dismiss (ECF No. 12), filed before the amended complaint, was denied as moot. (*See* Order, ECF No. 22). Defendant now moves again to dismiss Plaintiff's complaint. That motion, as well as Defendant's Motion to Strike Plaintiff's sur-reply, which was filed without leave of Court, are now ripe for review.

## III. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) operates to evaluate the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005) (citation omitted). Accordingly, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). Although the court's primary focus will be on the allegations in the complaint, the court may also consider "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (internal quotations omitted) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to

4

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And though the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

## IV. LAW & ANALYSIS

The ADA was "enacted [] in 1990 to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001). To that end, Congress created a "broad mandate" in the ADA, "forbid[ding] discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Id.* at 675 (citations omitted). With respect to employment, the ADA (as well as the ADAAA) aims to remove the barriers preventing qualified individuals with disabilities from enjoying the employment opportunities they would otherwise have access to without a disability; it does so by prohibiting employment discrimination on the basis of an employee's disability, preventing employers from inappropriately inquiring about an employee's disability except where job-related, and forbidding employers from retaliating against employees who exercise their rights under the ADA.

In the Amended Complaint, Mishos alleges that McKesson violated her rights pursuant to the ADA and ADAAA in four separate ways.[1] *First*, Mishos alleges that she has been discriminated on account of being "regarded as" disabled or having a "record of" a disability

---

[1] The first three claims described below are all listed under Count I of the Amended Complaint. But as they allege separate violations, the Court treats them separately here. *See also Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (noting that pleadings from *pro se* litigants are subject to "less stringent standards than formal pleadings drafted by lawyers,' and therefore should be liberally construed" (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004))).

5

impairment. (*See generally* Am. Compl. ¶¶ 51–78, ECF No. 23). *Second*, she asserts that, in asking her to upload her vaccination status and undergo temperature checks, McKesson inappropriately required non-job-related medical examinations. (*See id.* ¶¶ 79–89). *Third*, the requirement that employees provide their vaccination status (and COVID-19 test results) to McKesson allegedly violated her medical privacy rights. (*See id.* ¶¶ 90–94). *Fourth*, she claims that she was terminated in retaliation for her attempts to assert her rights under the ADA and the ADAAA. (*See id.* ¶¶ 128–58). This Court addresses each claim in turn.

### A. Disability Discrimination

To state a claim for disability discrimination pursuant to the ADA, a plaintiff must "show: 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Keogh v. Concentra Health Servs., Inc.*, 752 F. App'x 316, 324 (6th Cir. 2018) (quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)). Disability, in this context, is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Daughtery*, 544 F.3d at 703 (quoting 42 U.S.C. § 12102(2)(A)–(C) and citing Ohio Rev. Code § 4112.01(A)(13)). These are known colloquially as the "actual disability," "record of," and "regarded as" prongs. *See* 29 C.F.R. § 1630.2(g)(2).

Mishos' disability discrimination claim falls short at the very first hurdle: she has not alleged adequately that she is disabled. She contends that she is disabled only under the "record of" and "regarded as" prongs, acknowledging that she is not "actually disabled." (Am. Compl. ¶

6

53, ECF No. 23). Under the ADA, an individual is "'regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 47 U.S.C. § 12102(3)(A). This does not apply to "impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id.* § 12102(3)(B). Alternatively, a plaintiff may establish that she falls within the "record of" prong, which means that she "has 'a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'" *Mx Grp., Inc. v. City of Covington*, 293 F.3d 326, 339 (6th Cir. 2002) (quoting 28 C.F.R. § 35.104(3)).

Note that both the "record of" and "regarded as" prongs require the employer to perceive the employee as having a "physical or mental impairment," either by acting as if she is impaired or by classifying her in records as impaired.[2] Mishos presents two possible impairments that McKesson has regarded her as having or has misclassified her as having:[3] (1) "'as if' [she] carried a specific, active, infectious disease"; or (2) "'as if' [she] had an impaired or suppressed immune system that made [her] prone to contracting 'Covid-19'." (Am. Compl. ¶ 7, ECF No. 23). McKesson has allegedly done so simply by virtue of promulgating a workplace COVID-19 policy.

The first possibility is that she was infected with COVID-19. But there is no indication that, by (accurately) classifying Mishos as unvaccinated, McKesson was also labeling her as infected by COVID-19. Rather, McKesson treated Mishos as *potentially* infectious, not as

---

[2] Although the impairment must "substantially limit" a major life activity for the "record of," that is no longer the case for the "regarded as" prong. Prior to 2008, courts had held that an individual was "regarded as" having an impairment only if the impairment "substantially limit[ed] one or more of the major life activities of such individual." *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999). In 2008, however, the ADAAA inserted "whether or not" language into the definition of "regarded as." *See* 42 U.S.C. § 12102(3)(A).

[3] Her allegation, in fact, is that McKesson has discriminated against not only her, but also all unvaccinated individuals at the company who had not requested an exemption.

7

presently infection—as if she might contract COVID-19 in the future.  That does not constitute an impairment under the ADA.  *See EEOC v. STME, LLC*, 938 F.3d 1305, 1315 (11th Cir. 2019) (concluding that "the disability definition in the ADA does not cover this case where an employer perceives a person to be presently healthy with only a potential to become ill . . . in the future"); *see also Earl v. Good Samaritan Hosp. of Suffern*, No. 20-cv-03119, 2021 WL 4462413, at *6 (S.D.N.Y. Sept. 28, 2021) (noting that the "perception of infectiousness is not the same as perceived disability").

And even if it were the case that McKesson viewed Mishos as having contracted COVID-19, she has still failed to state a claim under the "regarded as" prong.  In general, the enforcement of policies asking an employee to distance socially or wear a mask is not disability discrimination, but rather just the application of public health guidelines.  *See, e.g.*, *Rice v. Guardian Asset Mgmt., Inc.*, 3:21-cv-00693, 2021 WL 4354183, at *2–*3 (N.D. Ala. Aug. 19, 2021), *aff'd*, 2022 WL 1763816 (11th Cir. June 1, 2022).  Moreover, "being perceived as having COVID-19 is not a cognizable disability under the ADA" because "[t]he vast majority of cases of COVID-19 last fewer than 20 days" and thus are transitory and minor.  *Thompson v. City of Tualatin*, No. 3:21-cv-01587, 2022 WL 742682, at *2 (D. Or. Mar. 11, 2022) (citations omitted).

The second possibility McKesson suggests is that McKesson treated her as having "an impaired or suppressed immune system . . . prone to contracting 'COVID-19'." (Am. Compl. ¶ 7, ECF No. 23).  This too fails to state a claim.  McKesson's policies were applied broadly, to all U.S. employees who worked in certain roles.  (*See* Pl.'s Ex. A-6, ECF No. 23-1) (requiring that all employees "who enter professional healthcare settings as part of their role" be fully vaccinated). There is no indication that the COVID-19 policies were implemented because McKesson viewed unvaccinated individuals as carrying COVID-19 or as having a suppressed immune system; rather,

8

McKesson believed, as did other organizations that issued similar policies, that all individuals were susceptible to contracting COVID-19—*i.e.*, that susceptibility to COVID-19 is simply the natural, baseline condition of the human immune system. *Cf. United States of America*, WORLD HEALTH ORG., https://covid19.who.int/region/amro/country/us (last visited June 12, 2023) (showing that nearly one-third of the population of the United States has contracted COVID-19 at some point over the last three and a half years). In short, the fact that McKesson issued COVID-19 policies or classified Mishos as unvaccinated does not support the inference, even when reading the complaint in the light most favorable to the plaintiff, that McKesson perceived her to be impaired. District courts around the country have come to the same conclusion when confronted with this issue; just "'because [an employer] followed the relevant public health guidance' regarding COVID-19 in its actions towards [an employee] 'does not mean [it] regarded him as disabled.'" *Chancey v. BASF Corp.*, No. 3:22-cv-00034, 2022 WL 18438375, at *3 (S.D. Texas Dec. 29, 2022) (some alterations in original) (quoting *Champion v. Mannington Mills, Inc.*, 538 F. Supp. 3d 1344, 1350 (M.D. Ga. 2021)); *see also Shklyar v. Carboline Co.*, 616 F. Supp. 3d 920, 926 (E.D. Mo. 2022), *aff'd*, 2023 WL 1487782 (8th Cir. Feb. 3, 2023); *Speaks v. Health Sys. Mgmt., Inc.*, No. 22-cv-00077, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022).

In short, Mishos has not shown that McKesson regarded or misclassified her as having an impairment. Neither condition she proposes qualifies as "an actual or perceived physical or mental impairment" cognizable under the ADA. There is an absence of facts alleged showing that being unvaccinated is a disability or that being classified as unvaccinated signified having a suppressed or weakened immune system. And even if McKesson was "making a record of 'disability' by classifying her as 'unvaccinated,'" Mishos has presented no factual allegations from which this

9

Court can draw the inference that such disability "substantially limits one or more [of her] major life activities." (Am. Compl. ¶ 34, ECF No. 23).

It is also worth clarifying a few further points that Mishos appears to misunderstand. Mishos claims notice "that she was regarded as having a disability" by the company. (Am. Compl. ¶ 115, ECF No. 23). But an employee cannot unilaterally establish that she falls within the "regarded as" prong on her own. *See, e.g.*, *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1106 (6th Cir. 2008) (rejecting plaintiff's unilateral assertion that she met the "regarded-as" prong). That determination must be made by a court of law, based on evidence in the record of the employer's actions and of the impairment. *See id.* Similarly, a plaintiff cannot shift the burden of proof under the ADA simply by asserting a "regarded as" or a "record of" claim without the requisite supporting evidence or allegations. (*See id.* ¶ 53; *see also* Pl.'s Resp. in Opp'n at 1, ECF No. 25). Instead, under the familiar *McDonnell Douglas* burden-shifting framework, a plaintiff must first make out a *prima facie* case of discrimination. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891–92 (6th Cir. 2016) (describing the framework for indirect claims of disability discrimination under the ADA). If, and only if, she is able to do so does the burden shift to the defendant.

Thus, contrary to Mishos' assertions, the mere fact that she told McKesson that it was acting as if it regarded her as disabled has no legal import. It did not shift the burden, such that she no longer needed to plead factual allegations of an impairment that she was perceived as or misclassified as having. Had she done so, under the burden-shifting framework, McKesson would then be required to demonstrate that it had offered an adequate medical accommodation. And, in fact, it is undisputed that McKesson offered accommodations and that Mishos did not request an accommodation. (*See* Pl.'s Resp. in Opp'n at 8, ECF No. 25) (admitting that she "has never

10

requested any accommodation from the defendant regarding its so-called 'COVID' policy"). Having offered Mishos accommodations in compliance with the law, McKesson need not qualify for some exception from the ADA to defeat Mishos' claim. (*See id.* at 2).

As Mishos has failed to allege a cognizable disability under the ADA and has never sought an accommodation, this Court finds that she has failed to state a disability discrimination claim. Her first claim is **DISMISSED WITH PREJUDICE**.

### B. Non-Job Related Medical Inquiries

As part of its return-to-office policy, McKesson required employees to disclose their vaccination status and submit COVID-19 diagnostic test results.[4] Mishos alleges that these were impermissible disability-related inquiries, since they were not related to her job and were not consistent with any conceivable necessity. (*See* Am. Compl. ¶¶ 80–81, ECF No. 23).

The ADA prohibits employees from "requir[ing] a medical examination and . . . mak[ing] inquiries of an employee as to whether such employee is an individual with a disability . . . unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *see* 29 C.F.R. §§ 1630.13(b), 1630.14(c). As explained earlier, having COVID-19 is not a disability given the transitory nature of the illness (especially as Mishos has not alleged that she is suffering from "long COVID"), nor is being unvaccinated a disability. Thus, COVID-19 diagnostic tests or vaccination status updates are not medical examinations or inquiries "as to whether such employee is an individual with a disability." 42 U.S.C. § 12112(d)(4)(A); *see also* EEOC, *Enforcement Guidance: Disability–Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA)*, Part B.1 (July 27, 2000), 2000 WL

---

[4] Mishos also alleges that McKesson required employees to "disclos[e] vital statistics, like body temperature." (Am. Compl. ¶ 81, ECF No. 23). But McKesson's return-to-work policy explicitly noted that it would "not be requiring temperature checks . . . to access our buildings." (Pl.'s Ex. A-1, ECF No. 23-1).

11

33407181, at *3 (defining "disability-related inquiry" as "a question (or series of questions) that is likely to elicit information about a disability").

Moreover, guidance issued by the EEOC to employers about how to handle the COVID-19 pandemic advised that asking employees about their COVID-19 vaccination status did not violate the ADA because such questions were not likely to disclose the existence of a disability. *See Bobnar v. AstraZeneca*, No. 1:22-cv-02258, 2023 WL 3340466, at *4 (N.D. Ohio May 9, 2023). The Sixth Circuit has acknowledged that EEOC enforcement guidance is "very persuasive authority" as to questions of interpreting the ADA. *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 815 (6th Cir. 2012) (citation omitted).

Because McKesson's requests about Mishos' vaccination status and COVID-19 test results did not constitute disability-related inquiries or examinations, *see Chancey*, 2022 WL 18438375, at *4; *Sharikov*, 2023 WL 2390360, at *15, this portion of the complaint also fails to state a claim.

### C. Right to Medical Privacy

Mishos also alleges that McKesson has violated her right to medical privacy by storing confidential medical information without regard to her rights under the ADA. (*See, e.g.*, Am. Compl. ¶¶ 84, 90–94, ECF No. 23). The implementing regulations of the ADA require that an employer must keep any "[i]nformation obtained . . . regarding the medical condition or history of any employee . . . on separate forms and in separate medical files" and treat that information "as a confidential medical record." 29 C.F.R. § 1630.14(d)(4)(i). Supervisors and managers are permitted to be informed about an employee's medical conditions and accommodations. *Id.*

Although Mishos claims in her pleadings that McKesson did not make any provisions to comply with this regulation, the exhibits she attached to her pleadings demonstrate that the opposite is true. *See Bassett*, 528 F.3d at 430. In the notices McKesson issued to employees about

the COVID-19 policies, it explained that information about vaccination status "will be stored in a confidential file and used only for authorized business purposes, or health, safety and compliance purposes. It is maintained separately from other HR personnel files . . . ." (Pl.'s Ex. A-12, ECF No. 23-1). Additionally, Mishos herself disclosed her vaccination status to her supervisors and HR personnel via email.

She does not allege that she submitted any COVID-19 information to McKesson through the company's (allegedly unsecure) health information portal, that any such information was shared inappropriately, or that any unauthorized personnel were informed of her vaccination status. This, too, fails to state a claim.

### D. Retaliation

The final ADA claim presented by Mishos is for unlawful retaliation. Because she has not presented direct evidence of retaliation, she "bears the initial burden to establish a prima facie case of retaliation, which requires a showing that: (1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citation omitted).

This is typically understood to be a "low hurdle." *Gribcheck v. Runyon*, 245 F.3d 547, 551 (6th Cir. 2001) (citation omitted). It is not, however, one that Mishos clears. She maintains that she has engaged in an array of protected activity—specifically by sending various emails to her supervisors and HR personnel at McKesson explaining her refusal to update her vaccination status or submit to COVID-19 testing and asserting her "rights to informed consent and her rights protected under the ADA." (*E.g.*, Am. Compl. ¶ 31, ECF No. 23; *see also* Pl.'s Resp. in Opp'n at

13

15, ECF No. 25). The earliest of these communications was sent in November 2021. (*See* Am. Compl. ¶ 31, ECF No. 23; *see also* Pl.'s Ex. A-18A, ECF No. 23-2).

But the adverse employment actions that Mishos complains of—being "isolated and segregated from her coworkers" and being terminated—were caused by her non-compliance with the company's COVID-19 policy, which was put in place prior to her engaging in the alleged protected activities. (Am. Compl. ¶¶ 28, 144–45, ECF No. 23). She was terminated not for the emails she sent to her supervisors or HR (assuming for the sake of argument that the emails were protected activity), but for her refusal to be vaccinated. McKesson stated from the beginning that employees who did not comply with the vaccination policy would be terminated. (*See, e.g.*, Pl.'s Ex. A-6, ECF No. 23-1). That policy was put in place on September 13, 2021.

In other words, the cause of the adverse actions already existed two months before Mishos ever spoke up in opposition to the vaccination requirement (or other COVID-19 policies). *See also Sharikov*, 2023 WL 2390360, at *14 (collecting cases with similar fact patterns). Given that timeline, where the real cause of the adverse action occurred *before* the protected activity, Mishos cannot establish a causal connection between the adverse action and the protected activity. *See Trainor v. HEI Hosp., LLC*, 699 F.3d 19, 27 (1st Cir. 2012) ("[T]o establish that an adverse employment action was caused by an employee's protected activity, the employer's decision to act adversely to the employee must postdate the protected activity." (citations omitted)); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (per curiam). Accordingly, she has failed to state a claim for retaliation under the ADA.

## V. CONCLUSION

At bottom, it appears that Mishos' claims under the ADA serve merely as a vehicle to express her disagreement with the COVID-19 policies that McKesson implemented. (*See, e.g.*,

Pl.'s Resp. in Opp'n at 4, ECF No. 25) (arguing that the policy "is not only irrational and unreasonable, it contravenes more than one hundred years of public health policy"). But this Court need not reach the scientific or public health merits of those policies today, because each of her ADA claims suffers from fatal flaws. Even when drawing all inferences in Mishos' favor, she has failed to establish that she is disabled within the meaning of the ADA, that vaccination status is a disability-related inquiry, that McKesson has violated her right to medical privacy, or that her adverse employment actions were caused by her protected activities.

Accordingly, Defendant's Motion to Dismiss (ECF No. 24) is **GRANTED**. Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 34) is therefore **DENIED AS MOOT**; the proposed amendments to her complaint do not address the deficiencies identified herein, such that the amendment would be futile. This case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: September 12, 2023**