Jessica Mishos, Plaintiff in *Propria Persona*
1482 Hildreth Aveue
Columbus, OH 43203
jessmishos@protonmail.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
85 Marconi Blvd #121, Columbus, OH 43215

JESSICA MISHOS,
    PLAINTIFF,

v.   CASE NO. 2:22-cv-01666-ALM-KAJ

MCKESSON, INC.,
    DEFENDANT.

_____/

**OBJECTION AND MOTION TO VACATE FINAL ORDER**

Plaintiff hereby objects and timely moves this court to vacate Judge Algenon L. Marbley's September 12, 2023 "Opinion & Order" ("Order") dismissing plaintiff's complaint under FRCP 59(e) to allow the court to correct errors of fact and law upon which the judgment is based.

The District Court determined that plaintiff's claim failed because "she has not adequately alleged that she is disabled"[1]

**I. Plaintiff sufficiently alleged all the elements of a disability discrimination claim.**

Plaintiff sufficiently alleged the following facts in her complaint in support of a claim of disability discrimination and retaliation: (1) that her employer is a covered entity (See *Amend. Compl.* ¶¶ 7, 135); (2) that she has a disability within the meaning of the ADA under two prongs: "regarded as" and "record of" (See *Amend. Compl.* ¶¶ 141-148, 150-157); (3) that she is qualified to perform the essential functions of her job (See *Amend. Compl.* ¶¶ 200-202); (4) that she was engaged in protected activity and her employer knew she was engaged in protected activity (See *Amend. Compl.* ¶¶ 221-236, 250); and (5)

---

[1] *Order* p. 8

that she received adverse employment actions which were causally related to her protected opposition to the "Covid policy" (See *Amend. Compl.* ¶¶ 203-216, 251-265).

Plaintiff's complaint contained sufficient factual matter, which is required to be accepted as true, to state a claim to relief for disability discrimination under the ADA that is plausible on its face, which is the standard.

### A. Defendant admits that all employees were considered threats of contagious disease.

The defendant, instructed by numerous government agencies, agents and the news media, took the extraordinary step of classifying *everyone* as a potential threat of deadly, contagious disease the moment it adopted the "Covid policy" which failed to include any requirement to perform an objective, individualized assessment prior to imposing treatments. This blanket assumption was made under an emergency declaration. This fact cannot be disputed even though it is based upon implausible assumptions due to a lack of assessment.

The defendant also believed that all employees were a risk of transmission of deadly contagious disease and this is why treatment protocols were enforced by the employer on all employees. The Judge also concluded:

> McKesson treated Mishos as *potentially* infectious, not as presently infected—as if she might contract COVID-19 in the future. ...McKesson believed, as did other organizations that issued similar policies, that *all individuals were susceptible to contracting COVID-19—i.e.*, that susceptibility to COVID-19 is simply the natural, baseline condition of the human immune system.[2] [3]

It is more accurate to state, based upon measures taken, that McKesson considered all individuals as <u>currently potentially infectious</u> and this is demonstrated by the masking, "testing", distancing protocols which are designed to prevent transmission in-the-moment, and McKesson acted as if receiving a "Covid vaccine" prevented transmission indefinitely because "vaccinated" workers were allowed to stop masking and "testing". This leads to a second fact that cannot be disputed which is that the defendant is requiring medical treatments and interventions based upon presuming *everyone is a threat of deadly, contagious disease*; and only those employees who refuse treatments will *continue to be perceived as a threat of deadly contagious disease*. This is the specific group of employees which Mishos is in. A third fact which cannot be disputed is that the defendant effectively "quarantines" or

---

[2] See *Order*, pp. 7-9.
[3] McKesson never introduced any supporting expert evidence to conclude that all humans are especially sensitive or susceptible to contracting this specific deadly contagious disease. This is surmise on the Judge's part and the judge is not an expert on infectious disease.

terminates all employees who refuse these medical treatments and interventions by denying them physical access to workspaces and to employment in general. This demonstrates that the "untreated" group is *still considered an on-going threat of deadly contagion*. The plaintiff is simply alleging these facts in the complaint which have been used by the *defendant* to create new employment conditions.

The plaintiff did not allege that defendant regarded her as disabled because of her unvaccinated status. Plaintiff claimed that she was misclassified as *an on-going threat of deadly contagion* because refused prohibited medical treatments and she was terminated because she opposed and refused to comply with a policy that she claimed violated the ADA and other statutes.

**B. Defendant is attempting to dispute alleged facts improperly.**

The defendant failed to produce an Answer to the complaint, rather it moved to dismiss the complaint for procedural reasons under FRCP 12(b). The defendant has erroneously tried to use the Motion to dismiss as a forum for disputing alleged facts and this is completely improper and not allowed by the rules. The proper forum to dispute facts is in an Answer and through the discovery process. The defendant disputes several alleged facts of the plaintiff's personal knowledge. The District Court is aiding and abetting the defendant by allowing it to deny facts in a motion to dismiss, and attempt a defense, when such things should be addressed in an answer to the complaint. The Judge allowed this highly improper process against a *pro se* plaintiff, unschooled in the profession. This demonstrates that the court is advocating for the defendant and is acting in an arbitrary and capricious manner.

The defendant tried to revise plaintiff's claim of perceived impairment (*direct threat of contagion*) and record of perceived impairment (*on-going threat of deadly contagion* once treatment has been refused) into claiming that McKesson only perceived plaintiff as potentially infectious with a "transitory" case of "Covid". This is not Mishos' claim it is the defendant's revsion. It is also preposterous.

It is completely improper for the court to allow the defendant use a motion to dismiss as a forum for disputing alleged facts. This is already eggregious, but then the court allowed an unsupported revisionist defense theory to overcome the plaintiff's sworn allegations despite the fact that "transitory AND minor" are both questions of fact that cannot properly be analyzed at the pleading stage. The Court argues for the defendant and states that a plaintiff cannot be "regarded as" disabled for a transitory and minor impairment, and then erroneously applies this rule of construction to Mishos' pleading. The defendant made the irrelevant claim that the "vast majority of cases of COVID" are

transitory. Mishos never claimed to "have Covid"[4]. The defendant cannot fabricate a defense to the ADA out of the "transitory AND minor" provision because it has demonstrated and admitted that it has perceived Mishos as *a threat of deadly contagious disease* and made a record of her being an *on-going threat of deadly contagious disease* starting on June 1, 2021[5] through the termination date of March 28 or 30, 2022[6], and continuing past this present moment of October 2023, because she remains untreated. This is well beyond the 6 month cut-off. The defendant cannot claim the co-equal condition of "minor" because it demonstrates and admits that it terminates and will not reinstate any employee who it considers an *on-going threat of deadly contagious disease* because they are untreated.

The District Court could have reviewed *Eshleman v. Patrick Industries Inc*, No. 19-1403 (3d Cir. 2020), an appeal case which held that while a person with an actual condition that is both transitory and minor does not get to pursue a "regarded as" claim, it noted that the perception of the employer is the key to a "regarded as" case. The appeals court stated that the district court erred because it failed to address whether the impairment that Patrick Industries perceived—described in Eshleman's complaint as "continuing medical issues"—was transitory and minor, despite the fact that the actual surgery and recovery that Esheleman required was not going to last six months[7]. Eshleman argued that Patrick Industries perceived his recent medical issues to signify an on-going health condition and thus the perception he faced was not transitory and minor. The appeals court agreed and remanded the case back to the district court.

> "Eshleman's complaint contain[ed] plausible allegations that Patrick Industries regarded his series of recent medically-related absences as signs of a continuing medical condition that essentially rendered him damaged goods and therefore unemployable. The District Court failed to evaluate whether Eshleman's *perceived* chronic medical condition ["continuing medical conditions"], distinct from his lung surgery, was objectively transitory and minor. *See* 29 C.F.R. Pt. 1630, App. at § 1630.2(I) (2016) ("[A]n employer that terminated an employee with an objectively 'transitory and minor' hand wound, mistakenly believing it to be symptomatic of HIV infection, will nevertheless have 'regarded' the employee as an individual with a disability, since the covered entity took a *prohibited employment action based on a perceived impairment* (HIV infection) that is not 'transitory and minor.')" (*emphasis* added)

---

4   Mishos is apparently is one of the few humans are earth who do not have a "natural, baseline condition" of "susceptibility to Covid" as she has never been diagnosed with it.
5   *Plaintiff's Affidavit in Support of First Amended Complaint*, ¶ 14.
6   *Plaintiff's Affidavit in Support of First Amended Complaint*, ¶ 63-65.
7   Six months or less has been accepted as the guideline for establishing "transitory".

The Eschleman holding also points out the guiding principle that if the employer takes the prohibited employment action of firing the employee because of perceived disability, then the employer is violating the ADA. This is exactly what Mishos experienced. The holding clarifies that the perception of an on-going medical condition does not qualify for the "transitory" element and the adverse actions preclude the co-equal "minor" element.

**II. The Judge ignored alleged facts and made incorrect conclusions of law.**

**A. The Judge stated that following public health guidelines is not discriminatory.[8]**

The Judge is not reviewing the facts alleged in the complaint. Mishos complaint is about the abusive manner in which McKesson interpreted and enforced "public health guidelines" without any duty. There is nothing in the health guidance which instructs employers to punish and terminate employees who refuse treatment, furthermore McKesson is not the DOH and does not have the DOH's mandate or authority. McKesson claimed it was imposing "vaccination" requirements under Biden's Executive Order for Federal Contractors [DKT 23-1 p. 65] which, along with Biden's two other Executive Orders imposing "Covid vaccine" requirements, have been permanently stayed by the courts for improperly attempting to regulate public health. McKesson had reason to know in late November or early December 2021 that Biden's EO was no longer operative, three months before McKesson terminated Mishos. McKesson is not allowed to implement an employment policy which violates established public health policy.[9] McKesson may not adopt a policy which conflicts with rights protected under the ADA or other statutes. McKesson may not impose treatments and interventions which are not job-related. These issues were all raised by Mishos in the complaint and the judge ignored them.

**B. The Court also argued that Mishos cannot be "regarded as" disabled when defendant's policy applied broadly to all U.S. employees who worked in certain roles.**

The Court is again missing the point and ignoring alleged facts. Mishos alleged that defendant's "Covid policy" imposes *disparate treatment* upon "untreated" employees and upon employees who claim protected status. On the basis of compliance with a non-job-related medical inquiry and treatment, the policy classifies at least three types of employees: (1) employees who are no longer classified as "direct threats" because they are considered treated and cured ("vaccinated"); (2) employees who are still classified as "direct threats" but who are undergoing treatments, tests and inquiries (the fabricated

---

8   *Order* p. 8.
9   Such as a diagnosis and judicial review is required prior to enforced treatment or quarantine.

"exemptions"); and (3) employees who are still classified as ongoing "direct threats" because they remain "untreated" and claim exclusion from the policy on the basis of the protection of the ADA. Mishos is the the third group. Defendant's "Covid policy" discriminates against "untreated" employees by using a "treated"/"untreated" qualification standard as a new condition of employment. The third group is scheduled for termination. The policy is disproportionally applied to individuals who claim protected opposition to all policy treatments, tests and inquiries. These are all clearly alleged violations of the ADA which the Judge ignored.[10]

### C. The Judge failed to discern the significance of Mishos' written notice of potential violations.

The judge ignored that under a "regarded as" claim no accommodations are required or necessary since the perceived disability is not a diagnosed disability. The judge used factually dissimilar case law to support his contention that because McKesson *claimed* it offered Mishos "accommodations"[11] this relieved McKesson of any need to defend or even respond to Mishos written notice of potential ADA violations because he believed that offering ("pseudo") accommodations defeated her claim.[12] The judge also misquoted the meaning of the text and holding in *Talley v. Family Dollar Store*. That case was about an "actual" claim of disability and so the employer required a doctor's note to confirm that the accommodation requested ( a stool to sit on while working as a cashier) was necessary. The case did not state, as the Judge wrote, that an employee is not able to claim a protected class unless a court confirms it.[13] Mishos gave her employer *written notice of possible violations* [DKT 1-3, pp. 24-27], stating that she opposed an arguably illegal policy, and she asked for a review of the legal basis for its demands, this is all that is required to establish that she engaged in protected activity and claimed protected status. There is no need of some "further authority" to claim protected status. The Judge stated that Mishos' written notice had "no legal import[ance]."[14] EEOC guidance on the subject of retaliation and what constitutes protected activity is instructive. "A communication or act is protected opposition as long as the circumstances show that the individual is conveying resistance to a perceived potential EEO violation."[15] The judge deliberately failed to conclude that the notice established Mishos protected status

---

10 *Plaintiff's First Amended Complaint* ¶ 114-117.
11 The ADA defines an accommodation as an adjustment or modification which enables an employee to perform their job functions. McKesson offered "masking and testing" or unpaid leave which do not qualify as ADA accomodations.
12 *Order* p. 11.
13 *Order* p. 10
14 *Order* p. 10
15 "Questions and Answers: Enforcement Guidance on Retaliation and Related Issues" EEOC-NVTA-2016-5

and opposition and that the defendant had a duty to respond and produce evidence of compliance, such as an individual assessment of the risk Mishos posed by being "untreated".

### D. Retaliation

Mishos fully alleged several instances of *adverse employment actions* which demonstrated the employer's perception that Mishos was an *on-going threat of contagious disease*. The adverse actions, which are the standard in "regarded as" claims, are direct evidence[16] of retaliationsuch as being banned from employee events because she wasn't "treated", being refused access to the work-place, being refused meaningful redress, being terminated beause she wasn't "treated".

The Court established that plaintiff failed to plead facts showing that a causal relationship existed between her protected activity and her termination. The Judge has already admitted that he failed to register the moment her protected status began. He then argues that the policy was imposed two months before plaintiff claimed her rights and opposed the policy, therefore he was unable to ascertain any causal correlation between plaintiff's subsequent opposition and the adverse employment actions. This Judge is looking at the wrong window of time. He should be looking at what adverse events happened once she opposed the policy, and not at the period when she was trying to figure out what to do.

EEOC enforcement guidance on retaliation is instructive:

> **3. Examples of Facts That May Support Finding of Retaliation**
>
> Different types or pieces of evidence, either alone or in combination, may be relevant to determine if the above causation standard has been met. In other words, different pieces of evidence, considered together, may allow an inference that the materially adverse action was retaliatory.
> The evidence may include, for example, suspicious timing, verbal or written statements, comparative evidence that a similarly situated employee was treated differently, falsity of the employer's proffered reason for the adverse action, or any other pieces of evidence which, when viewed together, may permit an inference of retaliatory intent.
> Suspicious timing. The causal link between the adverse action and the protected activity is often established by evidence that the adverse action occurred shortly after the plaintiff engaged in protected activity.[17]

Naturally plaintiff's opposition arises *after* the implementation of the policy. Mishos has supplied direct evidence of retaliation, which satisfies the "but-for" condition of retaliation. She has

---

16 The "McDonnel-Douglas" burden shifting scenario the Judge discussed next simply does not apply to Mishos case, because it is only used when direct evidence of discrimination is lacking.

17 *EEOC Enforcement Guidance on Retaliation and Related Issues* issued August 25, 2016

7

supplied written statements from her employer detailing treatments, deadlines and consequences. She has shown that she was treated disparately once she refused treatments. Plaintiff has fully alleged that the only reason she was fired was because she refused the medical treatments and the defendant admits this. She has also alleged that she gave the employer notice of the claims and that they were based on discrimination and non-job-related treatments, tests and inquiries. The employer has not provided a credible reason for retaliating against the plaintiff that is not discriminatory. Claiming that she was fired because she was insubordinate to a policy with potential ADA violations only proves plaintiff's claims. Therefore the judge has abundant evidence of retaliation. He is arbitrarily and capriciously refusing to acknowledge it.

### III. The Court is fabricating legal standards and ignoring a Congressional mandate.

The Judge stated that Mishos failed to "plead factual allegations of an impairment that she was perceived as or misclassified as having".[18] The Court is twisting the meaning of the standards in *Bell v. Twombly* and *Ashcroft v. Iqbal* to fabricate the conclusion that the plaintiff has not *plausibly alleged* that she is disabled within the meaning of the ADA.

A claim has facial plausibility when the plaintiff pleads enough factual content that allows the court to draw the reasonable inference that the defendant *is liable* under the alleged claim *Bell v. Twombly*, 550 U.S. at 556. ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, at 556, 127 S.Ct. 1955.) "[A] complaint need not "make a case" against a defendant or "*forecast evidence* sufficient to *prove* an element" of the claim. It need only "*allege facts* sufficient to *state* elements" of the claim. McKesson has a legal duty to uphold the ADA. Mishos fully alleged all four necessary elements of a discrimination claim. The plaintiff's complaint clearly meets the standard and, furthermore, the plaintiff made allegations based upon the more rigorous standard of her personal knowledge, rather than "information and belief". Therefore, defendant's liability can be determined from the facts alleged in plaintiff's amended complaint, and defendant is an entity with a legal duty to uphold the ADA.

It is not a legal defense for the defendant to nakedly claim that it fired the plaintiff because she refused to comply with a policy, when that very policy *arguably violates the ADA*. Instead of analyzing McKesson's policy for legitimacy and ADA compliance the Judge simply parroted McKesson's naked claim. Judge Marbley wrote: "...the adverse employment actions that Mishos complains of—being

---

18 *Order* p.10

8

'isolated and segregated from her coworkers' and being terminated—were caused by her non-compliance with the company's COVID-19 policy."[19]

The Court failed to recognize that plaintiff opposed defendant's "Covid policy" because she claimed it violated her rights and she claimed that her employer was interfering with her rights by only presenting "exemptions" and denying ADA-based "opt-outs" and it provided no information about adverse reactions or a risk/benefit analysis of the experimental "vaccine" and no indication of its liability. Mishos alleged that her employer was improperly assuming a legal duty that is only granted to the DOH, not private employers; that the Biden EO basis for policy was stayed by the court three months before Mishos was fired; and that the policy conflicted with established public health policy. Defendant admits in written communications that it consistently threatened plaintiff with termination unless she received treatment and submitted proof of "full vaccination for COVID-19," by the determined deadline, and it ultimately terminated her employment. Given these facts, the court is not able to reach the legal or factual conclusion that Mishos was *insubordinate* without an answer from the defendant and an evidentiary process. The Court needs to closely analyze the alleged facts and determine whether the defendant appropriately handled an employee who claimed protected class status, asked for her rights to be acknowledged and, in the process, kept the burden of proof on the defendant to show the plaintiff was, in fact, a direct threat or whether the defendant presented valid legal defenses. There is no factual or legal basis at the pleading stage for the Judge as a neutral arbiter to *assume* the contested policy is legitimate, therefore he cannot reach the *conclusion* that Mishos was fired for "non-compliance" with a legitimate policy (insubordination) rather than for opposing a policy that denied her rights and was in conflict with established laws, as she fully alleged.

Congress stated in 2008 that the main focus of the courts should be <u>whether the employer is satisfying its obligations under the ADA</u>. "...[I]t is the intent of Congress that the primary object of attention in cases brought under the ADA should be *whether entities covered under the ADA have complied with their obligations*, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis."[20] (*emphasis added*). Thus the ADA standard of review for pleadings is directed at the employer's duty and the burden is on the employer to show that it complied with its duty which is essentially a slighty lower standard than in *Twombly* and *Ashcroft* because the covered entity's liability is assumed.

---

19  *Order* p.14
20  29 CFR Appendix to Part 1630-*Interpretive Guidance on Title I of the Americans With Disabilities Act.*

The District Court is countermanding Congress and imposing a higher threshold than the ADA-AA intends, when it moves to separate employees from coverage rather than focusing on the employer's compliance of its ADA-obligations. As another example: Judge Marbley opined that the policy was applied universally to everyone and used this to deny Mishos coverage. Yet, he admittedly failed to recognize that Mishos entered a protected class *the moment she noticed her employer of the potential violations*. She alleged the policy was *applied differently to her*, and to any employee who claimed their rights and refused non-job-related medical treatments, tests and inquiries, as only this group was terminated. The Judge refused to analyze Mishos' alleged facts of how McKesson responded to Mishos' protected status: it ignored her notice, it refused her meaningful redress, it continued to punish her, etc. Judge Marbley did not correctly analyze McKesson's responses for compliance with the law, instead he treated everything McKesson improperly disputed via a motion to dismiss as if the McKesson version was proven fact while refusing to accept Mishos sworn testimony and allegations as facts per legal standard. He nakedly advocated for the defendant.

**IV. Non-job-related medical treatments, tests and inquiries**

The Court stated that defendant was "plotting the best way to minimize the spread of COVID-19 among in-office employees."[21] However, defendant has no legal duty or obligation to prevent the "spread of COVID-19", especially in light of plaintiff's claims that, in the process, defendant's new policy conflicts with several established laws and interferes with her rights.

Plaintiff pointed out that the policy does not include any provisions to: (1) remain compliant with disability law or address the needs and rights of employees with disabilities, and (2) protect the medical privacy of employees. Plaintiff argued that the policy fails to provide any advice or instruction on how to conduct any individualized assessment to determine if an employee is actually a direct threat to the health and safety of others, and the policy required non-job-related medical examinations and treatments and disability-related inquiries of the plaintiff that were not consistent with business necessity and not permitted under *29 CFR Part 1630.13(b)*.

Judge Marbley addressed only one aspect of one portion of these allegations and remained mute on all the rest. He decided to only tackle one small aspect of the larger question of medical privacy. The question of medical privacy is inextricably intertwined with the question of whether the medical information being requested is objectively necessary for the performance of the employee's job duties, but Judge Marbley failed to analyze this issue. Marbley simply commented that because Mishos did not

---

21  *See* Order, p. 2.

10

submit any medical information through McKesson's health information portal, that she failed to allege that any of her medical information was shared inappropriately, or that any unauthorized personnel were informed of her vaccination status.[22] He did not analyze the larger question of whether the policy itself is non-compliant because of its tendency to invade medical privacy in general.

Mishos alleged that one of the medical information inquiries requested was: *have you taken a "COVID-19 vaccine"?* Mishos alleged this question 1.) was improper because the request had nothing to do with her ability to perform her job duties; 2.) was technically "disability-related" because the defendant would take adverse employment actions against all employees it classified as "unvaccinated and refusing treatment" because it misclassified this group as *an on-going source of contagion*; 3.) violated her medical privacy by even asking such a question as it was not job-related; 4.) and she had concerns about uploading such information onto a third-party website that did not disclose who had access to information that the ADA states is only to be shared with plaintiff's direct supervisors. Instead McKesson states that it will store this information on a third-party online portal and claims that the information will be "used only for authorized business purposes, or health, safety and compliance purposes."[23] which the Judge seems to think is perfectly fine. This statement fully demonstrates that the data dispersal is already beyond the scope of the ADA parameters. Her information is only supposed to be given out to immediate supervisors in order to enable her to perform her job functions. Her information is not permitted to be used for such undefined terms as corporate "health" purposes, "safety" purposes, "authorized business" purposes or "compliance" purposes through data sharing.

EEOC Guidance states that an employer must have objective evidence of a disease <u>before</u> it makes medical inquiries or imposes testing. The EEOC counsels employers that if they want to ask any individual employee to "test" and answer medical inquiries, then that employer is required to **first have a diagnosis** of that individual employee before making disability-related inquiries.

> **A. Disability-related inquiries and Medical Exams**
> 9. "If an employer wishes to ask only a particular employee to answer such questions, or to have a temperature reading or undergo other screening or testing, the ADA requires the employer to have a reasonable belief based on objective evidence that this person might have the disease."[24]

---

22  *Order* p. 13.

23  *Plaintiff's Exhibits* A-12, ECF No. 23-1

24  "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws *Technical Assistance Questions and Answers*" - Updated on July 12, 2022. https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws

11

Additionally, in order for the medical inquiries and medical tests imposed by McKesson's "Covid policy", to be ADA-compliant, they must satisfy both requirements illustrated by the same EEOC Guidance:

> "...once an employee begins work, any disability-related inquiries or medical exams must be *"job-related* and *consistent with business necessity."* (*emphasis added*) **Introduction "Disability-related Inquiries and Medical Exams"**

The "vaccine status" question is a disability-related inquiry prohibited by the ADA because McKesson treats all employees who decline the treatment as an on-going threat of contagion and terminates their employment. McKesson's step of taking adverse actions based upon the employee's answer to the question is what makes the inquiry prohibited, and the fact that the information requested is not job-related and is not consistent with "business necessity" which is a statutorily defined term which is conditioned upon the employer providing a specific risk assessment.

In addition, Judge Marbley failed to notice the alleged medical privacy violation inherent in McKesson holding "vaccinated-only" work functions. McKesson admitted to banning Mishos from particpation and any attendees were thus made aware of Mishos "vaccine-status" and could share their observations with any person they felt inclined to. Defendant never demanded medical treatments as a condition of employment before. The treatments are not related to performing essential job functions which demonstrates that the employer has no legal duty to impose these treatments.

Additionally, defendant's agents are clearly not trained to conduct medical examinations and impose treatments; the policy is admittedly implemented with no medical oversight and no diagnosis. There is no way to measure the success of the policy measures. In fact, defendant is infringing on public health laws and established public health policy by not following the diagnosis and due process conditions that have long been established for contagious disease. Plaintiff alleged this in her complaint and the Judge also noted that Mishos reiterated this point in her response to the motion to dismiss by "...arguing that the policy 'is not only irrational and unreasonable, it contravenes more than one hundred years of public health policy'. But [Judge Marbley concluded that] this Court need not reach the scientific or public health merits of those policies today...."[25] Judge Marbley was not requested to assess the merits of public health law, he was asked to take note of the ways in which McKesson's "Covid policy" *contravened* established public health law; specifically on the requirements of diagnosis, due process and judicial review prior to imposing treatments or quarantines.

---

25  *Order* p. 15

**CONCLUSION:** For the reasons herein the judge's decision constitutes abuses of discretion; with several factual errors, he erroneously applied statutes, he ignored defendant's burden, and he improperly allowed defendant to deny alleged facts without supporting evidence in a motion to dismiss, instead of an answer, and it should be reversed.

**WHEREFORE** the plaintiff requests an order reversing the Order, which also allows the second amended complaint to proceed and instructs the defendant to file an Answer to the second amended complaint.

DATED this 6 day of October, 2023.

_____
Jessica Mishos, Plaintiff in *Propria Persona*

Jessica Mishos, Plaintiff in *Propria Persona*
1482 Hildreth Aveue
Columbus, OH 43203
jessmishos@protonmail.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
85 Marconi Blvd #121, Columbus, OH 43215

JESSICA MISHOS,

    PLAINTIFF,

v.                                      CASE NO. 2:22-cv-01666-ALM-KAJ

MCKESSON, INC.,

    DEFENDANT.

_____/

**CERTIFICATE OF SERVICE**

    I, Jessica Mishos, hereby certify that a true and correct copy of the foregoing was duly served upon the defendant's attorneys, Federico G. Barrera III and Kathryn Ellen Toth, at the address of 127 Public Square, Suite 4100, Cleveland, OH 44114, via first class mail on this 6 day of October, 2023.

By: /s/ Jessica Mishos