IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JESSICA MISHOS, | : |
| | : |
| | : Case No. 2:22-cv-1666 |
| Plaintiff, | : |
| | : CHIEF JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : MAGISTRATE JUDGE JOLSON |
| MCKESSON CORPORATION, | : |
| | : |
| Defendants. | : |

## OPINION & ORDER

This matter is before this Court on Plaintiff's Motion to Vacate Judgment (ECF No. 39). For the following reasons, Plaintiff's Motion is **DENIED**, and this case shall remain **CLOSED**.

### I. BACKGROUND [1]

#### A. Factual Background

This matter arises out of alleged violations of the Americans with Disabilities Act of 1990 ("ADA"), Pub. L. No. 101-335, 104 Stat. 327 (1990) (codified as amended in scattered sections of 42 and 47 U.S.C.), and the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (codified in scattered sections of 29 and 42 U.S.C.). Plaintiff Jessica Mishos, proceeding without the assistance of counsel, asserts that the COVID-19 policies issued by her former employer, Defendant McKesson Corporation ("McKesson"), violated the ADA's prohibitions against disability discrimination, non-job-related medical examinations and inquiries, intrusion upon medical privacy, and retaliation. (*See generally* Am. Compl., ECF No. 23).

---

[1] The facts of the case are restated here for clarity. No facts have changed since this Court's Opinion & Order granting Defendant's Motion to Dismiss. (ECF No. 37).

1

Plaintiff began working for McKesson, a healthcare company headquartered in Texas, on August 27, 2018. (See Am. Compl. ¶ 18, ECF No. 23). McKesson has maintained an office location in Columbus, Ohio, since 2017, when it acquired the Columbus-based software company CoverMyMeds. Plaintiff started at McKesson as a Senior Account Coordinator, before transitioning to the Senior Associate Customer Success Manager role in August 2021. (*Id.*). McKesson had closed its offices through much of 2020 and the first half of 2021 in response to the global COVID-19 pandemic, permitting employees to work remotely during that time. (*Id.*). In the summer of 2021, McKesson began planning to re-open its offices while also plotting the best way to minimize the spread of COVID-19 among in-office employees. (*See* Affidavit of Jessica Mishos ¶¶ 11–12, ECF No. 23-1). In June, McKesson informed employees via email that they would be required to wear facemasks, to engage in social distancing, to come into the office on a staggered schedule, and to use an online scheduling tool to reserve desks. (*See id*. Ex. A-1).

Beginning on August 9, 2021, McKesson required employees who chose to work from the office to be fully vaccinated and to provide proof of vaccination. (*Id*. Ex. A-2). Employees at that point had a choice: they could continue working from home or could work out of the office, as long as they first submitted proof of vaccination to their manager in a 1-on-1 video call or in person. (*Id.*). The following month, McKesson updated its COVID-19 vaccination policy, requiring all "[e]mployees who enter professional healthcare settings as part of their role, … including sales professionals, delivery professionals, and implementation team" to be fully vaccinated by November 15, 2021. (*Id*. Ex. A-6). Additionally, all employees were required to inform the company of their vaccination status by October 1, 2021. (*See id*.). Any employee, however, who was "required but unable to be vaccinated due to a medical condition or sincerely

held belief" was authorized to seek an accommodation. (*Id*.). Employees who did not comply risked termination.

Plaintiff did not comply with any of the requirements outlined above. She did not provide her vaccination status to McKesson by the October 1, 2021, deadline. (Am. Compl. ¶ [32], ECF No. 23). She did not receive the COVID-19 vaccine. (*See id.* ¶ 32). Over the following months, Plaintiff had repeated conversations with her supervisors and Human Resources ("HR") employees at McKesson, in which she was told that her position would be terminated if she continued to refuse to receive the COVID-19 vaccine or request an accommodation. Plaintiff, in response, maintained her refusal and further claimed that she was unwilling to provide her vaccination status to McKesson because to do so, in the manner required by McKesson, would violate her rights. (*See generally id.* ¶¶ 27, 31–35, 37–39). She also asserted in emails to HR that, by classifying her as unvaccinated, McKesson was effectively labeling her as "disabled." (*Id*. ¶ 34). The only request from the company that Plaintiff did comply with was a "Covid-19: your questions answered" training, which she completed in January 2022. (*See id.* ¶ 40). Plaintiff was terminated in March 2022. (*Id*. ¶¶ 46–49).

### B. Procedural Background

Following Plaintiff's termination from McKesson, she filed a complaint in this Court. (*See* Compl., ECF No. 4). That complaint has since been superseded by an amended complaint. (*See* Am. Compl., ECF No. 23). Defendant's initial Motion to Dismiss (ECF No. 12), filed before the amended complaint, was denied as moot. (*See* Order, ECF No. 22). Defendant moved again to dismiss Plaintiff's complaint (ECF No. 24). This Court granted that Motion and dismissed the case. (ECF No. 37). Plaintiff then filed the present Motion, to which Defendant replied properly. The Motions are now ripe for review.

## II. STANDARD OF REVIEW

In the Sixth Circuit, a timely motion to vacate a judgment arguably may be "pursued either under Rule 59(e) – motion to alter or amend – or under Rule 60(b) – relief from judgment or order." *Peake v. First Nat. Bank and Trust Co. of Marquette*, 717 F.2d 1016, 1019 (6th Cir. 1983) (footnotes omitted); *see also, Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir. 1998) (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)) ("Where a party's Rule 59 motion is not filed within the mandatory *** period, it is appropriate for a court to consider the motion as a motion pursuant to Rule 60 for relief from judgment."); *Evans v. Cordray*, No. 2:09–CV–587, 2012 WL 3309642, at *1 (S.D. Ohio Aug.13, 2012) (noting that, in the Sixth Circuit, a motion styled as a "Request for Reconsideration" that does not cite a statute or civil rule may be pursued under Rule 59(e) or Rule 60(b)).

### A. Rule 59(e)

Under Fed. R. Civ. P. 59(e), a district court will reconsider a prior decision "if the moving party demonstrates: (1) a clear error of law; (2) newly discovered evidence that was not previously available to the parties; or (3) an intervening change in controlling law." *Owner–Operator Indep. Drivers Ass'n, Inc. v. Arctic Exp., Inc.*, 288 F. Supp. 2d 895, 900 (S.D. Ohio 2003). Additionally, a judgment may be altered or amended when necessary "to prevent manifest injustice." *Gen. Corp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). A motion under Rule 59(e), however, is "not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n. 5, 128 S. Ct. 2605, 171 L.Ed.2d 570 (2008) (quotation omitted). Generally, a finding of manifest injustice or a clear error of law

4

requires "unique circumstances," such as complete failure to address an issue or claim. *McWhorter v. ELSEA, Inc.*, No. 2:00–CV–473, 2006 WL 3483964, at *2 (S.D. Ohio Nov. 30, 2006) (citing *Collison v. Int'l Chem. Workers Union, Local 217*, 34 F.3d 233, 236 (4th Cir. 1994)).

The grant or denial of a Rule 59(e) motion "is within the informed discretion of the district court." *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982). Significantly, "justice does not require that the district court [grant reconsideration] on an issue that would not alter the district court's prior decision." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959–60 (6th Cir. 2004).

**B.  Rule 60(b)**

Rule 60(b) sets out six reasons for which the Court is authorized to grant relief: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. Fed. R. Civ. Pro. 60(b). Most grounds for relief under Rule 60(b) "relate to, if not require, new information about the case that could not reasonably have been discovered earlier." *GenCorp. Inc. v. Olin Corp.*, 477 F.3d 368, 372 (6th Cir. 2007); *see also Abrahamsen v. Trans–State Exp., Inc.,* 92 F.3d 425, 428 (6th Cir. 1996); *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844–46 (6th Cir. 1983). The "public policy favoring finality of judgments" generally limits the availability of relief under the rule. *See Waifersong Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). This is "especially true" for Rule 60(b)(6), "which applies only in exceptional or

5

extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (citing *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)); *see also GenCorp. Inc.*, 477 F.3d at 372.

### III. LAW & ANALYSIS

As a threshold matter, Plaintiff moves this Court to vacate its Order under Rule 59(e), so an analysis under Rule 60 is not necessary at this stage. (ECF No. 39 at 1). Plaintiff cannot and does not clear the high bar necessary to obtain relief under Rule 59(e). This Court's Order in question, granting Defendant's Motion to Dismiss, is not based on clear error; there is no newly discovered evidence (nor would the discovery of new evidence change Plaintiff's allegations); there has been no intervening change in controlling law; and dismissal is not manifestly unjust. (ECF No. 37).

#### A. No Clear Error of Law

The first test under Rule 59(e) is whether the court in question made a clear error of law in rendering its judgment. That is not the case here. Plaintiff's arguments rely heavily on a flawed interpretation of the ADA and its amendments.

Plaintiff first alleges that she has been discriminated against on account of being "regarded as" disabled or having a "record of" a disability impairment. (Am. Compl. ¶¶ 51–78, ECF No. 23). This Court has explained, however, that to state a claim for disability discrimination pursuant to the ADA, a plaintiff must "show: 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Keogh*

6

*v. Concentra Health Servs., Inc.*, 752 F. App'x 316, 324 (6th Cir. 2018). (ECF No. 37). Plaintiff failed to present a viable claim under even the first part of this test. She presents two possible impairments that Defendant has regarded her as having or has misclassified her as having: (1) "'as if' [she] carried a specific, active, infectious disease"; or (2) "'as if' [she] had an impaired or suppressed immune system that made [her] prone to contracting 'Covid-19'." (Am. Compl. ¶ 7, ECF No. 23). Neither condition she proposes qualifies as "an actual or perceived physical or mental impairment" cognizable under the ADA. None of the facts alleged, or laws cited, shows that being unvaccinated is a disability or that being classified as unvaccinated signified having a suppressed or weakened immune system. (ECF No. 37). Because neither condition is cognizable under the ADA, Plaintiff's claim fails.

Second, Plaintiff asserts that, in asking her to upload her vaccination status and undergo temperature checks, Defendant inappropriately required non-job-related medical examinations. (*See id.* ¶¶ 79–89). It is true that the ADA prohibits employees from "requir[ing] a medical examination and … mak[ing] inquiries of an employee as to whether such employee is an individual with a disability … unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *see* 29 C.F.R. §§ 1630.13(b), 1630.14(c). COVID-19 diagnostic tests or vaccination status updates, however, are not considered to be medical examinations or inquiries "as to whether such employee is an individual with a disability." 42 U.S.C. § 12112(d)(4)(A); *see also EEOC, Enforcement Guidance: Disability–Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA)*, Part B.1 (July 27, 2000), 2000 WL 33407181, at *3 (defining "disability-related inquiry" as "a question (or series of questions) that is likely to elicit information about a disability"). Finally, guidance issued by the EEOC to employers about how to handle the COVID-

7

19 pandemic advised that asking employees about their COVID-19 vaccination status did not violate the ADA because such questions were not likely to disclose the existence of a disability. *See Bobnar v. AstraZeneca*, No. 1:22-cv-02258, 2023 WL 3340466, at *4 (N.D. Ohio May 9, 2023). The Sixth Circuit has acknowledged that EEOC enforcement guidance, such as the relevant guidance here, is "very persuasive authority" as to questions of interpreting the ADA. *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 815 (6th Cir. 2012) (citation omitted). Given Sixth Circuit and EEOC guidance, Plaintiff's claim fails for this reason as well.

Third, Plaintiff argues that the requirement that employees provide their vaccination status (and COVID-19 test results) to Defendant allegedly violated her medical privacy rights. (Am. Compl. ¶¶ 90–94, ECF No. 23). As a threshold matter, Defendant disclosed her vaccination status to her supervisors via personal email. (ECF No. 37 at 13). Assuming *arguendo* that she had not voluntarily disclosed her medical information, the ADA requires that an employer keep any "[i]nformation obtained … regarding the medical condition or history of any employee … on separate forms and in separate medical files" and treat that information "as a confidential medical record." 29 C.F.R. § 1630.14(d)(4)(i). Defendant did exactly that. Plaintiff claims in her pleadings that Defendant did not make any provisions to comply with this regulation, yet the exhibits she attached to her pleadings demonstrate that the opposite is true. In the notices Defendant issued to employees about its COVID-19 policies, it explained that information about vaccination status "will be stored in a confidential file and used only for authorized business purposes, or health, safety and compliance purposes. It is maintained separately from other HR personnel files." (ECF No. 23-1). Accordingly, Plaintiff experienced no medical privacy violation as a result of her sharing COVID-19-related information.

Fourth, Plaintiff claims that she was terminated in retaliation for her attempts to assert her rights under the ADA and the ADAAA. (Am. Compl. ¶¶ 128–58, ECF No. 23). Because she has not presented direct evidence of retaliation, she "bears the initial burden to establish a *prima facie* case of retaliation, which requires a showing that: (1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). This is typically understood to be a "low hurdle." *Gribcheck v. Runyon*, 245 F.3d 547, 551 (6th Cir. 2001) (citation omitted). It is not, however, one that Plaintiff clears. She maintains that she engaged in an array of protected activity and suffered adverse employment actions as a result. But the adverse employment actions that Plaintiff complains of – being "isolated and segregated from her coworkers" and being terminated – were caused by her own non-compliance with the company's COVID-19 policy, which was put in place *prior to* her engaging in the alleged protected activities. In other words, the cause of the adverse actions already existed two months before she complained about the vaccination requirement. But, "the employer's decision to act adversely to the employee must *postdate* the protected activity." *Trainor v. HEI Hosp., LLC*, 699 F.3d 19, 27 (1st Cir. 2012); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (per curiam). So, given the timeline here, where the real cause of the adverse action occurred before the (alleged) protected activity, Plaintiff cannot establish a causal connection between the adverse action and the protected activity. Accordingly, Plaintiff's claim for retaliation under the ADA fails.

Because a Rule 59(e) motion is "not an opportunity to re-argue a case," Plaintiff's factual and legal arguments above cannot lie. In her Motion to Vacate, Plaintiff suggests that, because she generically identified the elements of an ADA discrimination claim, this action is immune to

9

dismissal via Rule 12(b)(6). (ECF No. 39 at 1-2). This is simply not the case. To survive, Plaintiff must "state[] a claim for relief that is plausible, when measured against the elements of an ADA claim … in other words, [she] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020). She does not do so here. Vague citations to the ADA do not create a plausible claim for relief and thus must be rejected.

Finally, Plaintiff's Motion to Vacate improperly raises a new direct-evidence framework for her above retaliation claim. Because she did not previously raise this point, however, it cannot be considered here. *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996) ("It is not the function of a motion to reconsider … to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue."). Taking the above facts into consideration, it is clear that Plaintiff cannot establish that this Court made any clear error of law. Plaintiff's briefing has now been analyzed as flawed more than once by this Court, and the fact remains that her Motion fails.

### B. No Newly Discovered Evidence

As above, Plaintiff cannot establish the remaining possible bases for amendment under Rule 59(e). Dismissal under Rule 12(b)(6) is based only on the allegations in Plaintiff's Amended Complaint. Therefore, the discovery of new evidence is not relevant to her Motion, nor does she allege a new relevant fact should change this Court's decision. Accordingly, she cannot meet this bar.

### C. No Controlling Law Has Changed

The ADA has not been amended, nor has there been any significant legal development that materially affects the parties' legal arguments. Accordingly, Plaintiff cannot meet this bar.

### D. Dismissal is Not Manifestly Unjust

A finding of "manifest injustice or a clear error of law requires unique circumstances, such as complete failure to address an issue or claim." *Denkins v. Mohr*, No. 2:13-CV-00584, 2015 WL 196410, at *2 (S.D. Ohio Jan. 15, 2015). Further, "justice does not require that the district court [grant reconsideration] on an issue that would not alter the district court's prior decision." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959-60 (6th Cir. 2004). Here, Plaintiff presents no new factual or legal consideration that could alter this Court's prior decision, and no unique circumstance is present.

Accordingly, because Plaintiff fails to meet the standards established by Rule 59(e), her Motion fails.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion (ECF No. 39) is **DENIED**, and this case shall remain **CLOSED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: May 30, 2024**